IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00091–EWN–KLM

DOROTHY H. KELLY,

    Plaintiff,

v.

WOLPOFF & ABRAMSON, L.L.P., a
Maryland limited liability partnership,

    Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

    This case involves a claim by Plaintiff Dorothy H. Kelly that Defendant Wolpoff & Abramson, L.L.P. engaged in abusive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (2006) ("FDCPA"), and the Colorado Consumer Protection Act, Colorado Revised Statutes § 6–1–101 *et seq.* (2006) ("CCPA"). This matter is before the court on: (1) Defendant's "Memorandum of Law in Support of Defendant's Motion to Dismiss," filed February 20, 2006; and (2) "Motion of Defendant to File Notice of Defendant's Supplemental Authority from the Tenth Circuit," filed Aug. 14, 2007. Jurisdiction is asserted pursuant to both federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367 (2006).

## FACTUAL BACKGROUND

*1.     Facts*

On or before June 2005, Defendant initiated debt collection activity against Plaintiff with respect to her alleged indebtedness to card issuer MBNA America ("MBNA"). (Compl. and Jury Demand ¶ 5 [filed Jan. 15, 2007] [hereinafter "Compl."].) Construing the allegations in Plaintiff's complaint in their most favorable light, on January 12, 2007, Plaintiff learned that: (1) on or before September 30, 2005, the alleged credit card debt was charged off the books of MBNA, which received financial benefit for this charging off; and (2) on or before October 30, 2005, MBNA sold the alleged credit card debt and, as of that date, MBNA no longer had any financial interest in Plaintiff's account. (*Id.* ¶¶ 6–7, 19.) Again making all reasonable inferences in Plaintiff's favor, it appears that before learning the above, but after MBNA sold the alleged debt, Defendant commenced arbitration proceedings with the National Arbitration Forum ("NAF") against Plaintiff to recover the alleged debt on behalf of MBNA. (*Id.* ¶¶ 8, 12.) Plaintiff objected to the proceedings in writing, but the arbitration went forward without Plaintiff's consent. (*Id.* ¶ 9.) The arbitrator found in favor of MBNA, and this award was confirmed by a Colorado state district court. (*Id.* ¶¶ 10, 15.)

*2.     Procedural History*

Plaintiff filed a complaint in this court on January 15, 2007, alleging that Defendant and NAF conspired to subject Plaintiff to an illegal and improper arbitration procedure to obtain fraudulently an arbitration award and confirmation of that award in state court against Plaintiff by: (1) NAF acting as a partial arbiter; (2) Defendant's failure to provide NAF or the state district

court with any proof of the alleged credit card debt and NAF's failure to require such proof; and (3) Defendant's failure to inform NAF and the state district court that MBNA was not a real party in interest to the arbitration and that MBNA received financial benefit from both charging off and selling Plaintiff's debt. (*Id.* ¶¶ 10–15.) On February 20, 2007, Defendant filed a motion to dismiss, arguing that Plaintiff's FDCPA claim warrants dismissal because: (1) Plaintiff has failed to allege facts showing Defendant used violence or other criminal means in collecting Plaintiff's debt; (2) the claim is time-barred; (3) the Rooker-Feldman Doctrine bars this court from asserting subject-matter jurisdiction; and (4) the doctrines of *res judicata* and collateral estoppel prohibit Plaintiff from making the claim. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 4–9 [filed Feb. 20, 2007] [hereinafter "Def.'s Br."].) Further, Defendant argues Plaintiff's state law claim fails because the CCPA does not support a cause of action against her opponent's attorney. (*Id.* at 9–10.) On March 13, 2007, Plaintiff responded to the motion. (Pl.'s Resp. Re: [sic] Mot. to Dismiss [filed Mar. 13, 2007] [hereinafter "Pl.'s Resp."].) On March 22, 2007, Defendant replied in support of its motion. (Def.'s Reply. to Pl.'s Opp'n to Mot. to Dismiss [filed Mar. 22, 2007] [hereinafter "Def.'s Reply"].) This issue is fully briefed and ripe for review.

## ANALYSIS

### 1.    *Legal Standard*

Defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. (Def.'s Br.) Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to

them under a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 [1986]) (further citations omitted). When a federal court lacks subject matter jurisdiction over a dispute, the court must remand the action to state court. 28 U.S.C. § 1447(c) (2006). This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where jurisdiction does not affirmatively appear in the record. *Amundson & Assoc. Art Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc.*, 977 F. Supp. 1116, 1120–21 (D. Kan. 1997) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 702 [1982]).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1) (2007). "The party invoking jurisdiction bears the burden of establishing such jurisdiction . . . ." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004.) A plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1379 (10th Cir. 1989). Moreover, "[w]here a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Radil*, 384 F.3d at 1224 (citing *Pringle v. United States*, 208 F.3d 1220, 1222 [10th Cir. 2000]).

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6) (2007). For the purposes of a Rule 12(b)(6) motion, a court should only dismiss the claim when

— after accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to plaintiff — the court concludes that the plaintiff failed to allege a set of facts establishing a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007); *Dubbs v. Head Start Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir. 1999]).

### *2.    Evaluation of Claims*

Defendant contends Plaintiff's FDCPA claims warrant dismissal based on: (1) Plaintiff's failure to allege Defendant used or threatened to use violence; (2) the FDCPA's statute of limitations; (3) the *Rooker-Feldman* doctrine; and (4) the doctrines of *res judicata* and collateral estoppel. (Def.'s Br. at 4–9.) Additionally, Defendant argues Plaintiff's CCPA claim should be dismissed because the statute does not permit Plaintiff to maintain a cause of action against her opponent's attorney. (*Id.* at 9–10.) I address Defendant's arguments in turn below.

#### *a.    Preliminary Matter: Defendant's Supporting Evidence*

In ruling upon a 12(b)(6) motion, a court may consider documents central to Plaintiff's claims that are incorporated by reference or partially quoted in the complaint, so long as the authenticity of those documents is not in dispute. *GFF Corp. v. Associated Wholesale Grocers*,

130 F.3d 1381, 1384 (10th Cir. 1997).[1]  Relying upon this rule, Defendant submits the following documents in support of its motion: (1) Defendant's NAF claim against Plaintiff; (2) notice of arbitration to Plaintiff; (3) Plaintiff's objection to arbitration; (4) Defendant's motion for confirmation of the arbitration award, filed in a Colorado state court; and (5) a transcript of judgment in favor of MBNA against Plaintiff in the amount of $18,685.13.  (Def.'s Br., Ex. 1 [NAF Claim; Not. of Arb.; Obj. to Arb.; NAF Award], Ex. 2 [Mot. for Confirmation]; Def.'s Reply, Ex. 1 [Tr. of J.].)  Plaintiff does not and cannot dispute that these documents are incorporated by reference in her complaint, but does dispute the authenticity of these documents.[2]  (Pl.'s Resp. at 1, Ex. 1 ¶ 2 [Pl. Aff.]; *see* Compl.)  Plaintiff does not explain the basis for contesting the validity of the documents and visual inspection of the documents reveals no such basis — one bears the NAF letterhead and the another is actually signed by Plaintiff.  (*See* Pl.'s Resp. at 1; Def.'s Br., Ex. 1 at 1–2, 9–14 [NAF Claim].)  In fact, the court is left with the distinct impression that Plaintiff objects to the authenticity of the documents without rational basis in an attempt to force the court's denial of Defendant's motion to dismiss.  Nonetheless, the court need not make a determination regarding the authenticity of these documents, nor — at this time — contemplate whether Plaintiff's attorney has exposed herself to Rule 11 sanctions.  Even if I consider the documents at issue when relevant, they provide no help to Defendant.  Thus, for the

---

[1] As noted above, evidence may also be considered in deciding a Rule 12(b)(1) motion. (*See Analysis* § 1, *supra.*)

[2] Because Plaintiff did not seek leave to file a surreply, she presumably does not contest the authenticity of the certified transcript of judgment submitted with Defendant's reply brief.

purposes of this motion, I will assume without deciding that the documents are authentic and thus appropriate for my consideration.

### b. *Plaintiff's FDCPA Claims*

The FDCPA was passed to eliminate abusive debt collection practices. 15 U.S.C. § 1962(e) (2006). Plaintiff's complaint alleges that Defendant violated several provisions of the FDCPA, which generally prohibit deceptive, aggressive, and invasive debt collection practices. (Compl. ¶ 17.)

#### i. **Rooker-Feldman *Doctrine*** [3]

Defendant argues that the *Rooker-Feldman* doctrine bars this court from asserting subject-matter jurisdiction over Plaintiff's FDCPA claim. (Def.'s Br. at 5–8.) "*Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). In recent years, the Supreme Court has circumscribed the scope of this doctrine, mandating that it be applied only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

---

[3] I address Plaintiff's *Rooker-Feldman* argument first, because it implicates the subject matter jurisdiction of this court. "When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 [6th Cir. 1990]).

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Defendant urges that Plaintiff's FDCPA claim is "inextricably intertwined" with the state court judgment because: (1) the allegations underlying the claim were conclusively determined against Plaintiff by the state court; and (2) finding for Plaintiff here would "effectively operate to overturn the state court's order enforcing the arbitration award." (Def.'s Br. at 6–8.) Plaintiff counters that "[c]laims under the FDCPA are independent federal claims and are not inextricably intertwined with any state court decision." (Pl.'s Resp. at 3.)

The phrase "inextricably intertwined" is not easily defined and has brought much confusion to the *Rooker-Feldman* analysis. *Bolden v. City of Topeka*, 441 F.3d 1129, 1140 (10th Cir. 2006). The Tenth Circuit has recently stated that "the purpose of the term is to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* at 1141. However, a court is not barred from exercising jurisdiction under *Rooker-Feldman*, even if a plaintiff attempts to litigate in a federal court a matter previously litigated in state court, so long as the plaintiff "presents some independent claim." *Exxon Mobil Corp.*, 544 U.S. at 239. This is true even if finding in the federal plaintiff's favor "denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.*

The Supreme Court's holding in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), a source for the *Rooker-Feldman* doctrine, illustrates each of the above points. In *Feldman*, the plaintiffs petitioned the District of Columbia Court of Appeals to waive a court

rule requiring applicants to the District of Columbia bar to have graduated from an accredited law school. 460 U.S. at 471. After the court denied plaintiffs' request for a waiver, they filed suit in the United States District Court for the District of Columbia, attacking the local court's refusal to waive the requirement as well as the constitutionality of the requirement itself. *See id.* at 468–70, 472–73. The federal district court dismissed for lack of jurisdiction. *Id.* at 470. Plaintiffs appealed the decision all the way to the Supreme Court, which found the federal district court did not have jurisdiction to consider whether the local court's denial of waiver was arbitrary or unreasonable, because such determinations were "inextricably intertwined" with the D.C. court's decision. *Id.* at 486–87. However, the federal district court did have jurisdiction to hear the action on the constitutionality of the rule, because "the challenge to the rule itself was not a challenge to the judgment (even though overturning the rule would undermine the local court's waiver rule by mooting the denial of the waiver, since a waiver would no longer be necessary)." *Bolden*, 441 F.3d at 1141; *Feldman*, 460 U.S. at 487.

In the case at bar, it is utterly clear that Plaintiff has asserted an independent claim against Defendant pursuant to the FDCPA, a claim neither party asserts was pursued in state court. (*See* Compl.; Def's. Br.; Pl.'s Resp.) In asking this court to determine whether Defendant engaged in abusive debt collection practices, Plaintiff does not force the court into appellate review of the state court's confirmation of Defendant's arbitration award. As the Tenth Circuit explained in *Bolden*:

> Appellate review — the type of judicial action barred by *Rooker-Feldman* — consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in

> contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the *bona fides* of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation, the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

441 F.3d at 1143.

Here, determining whether Defendant violated the FDCPA does not require this court to concern itself with the *bona fides* of the prior judgment. Although it is true that if I found in favor of Plaintiff, it certainly would put the validity of the state court judgment in jeopardy, this result has been specifically contemplated by the Tenth Circuit, which found such an outcome does not implicate the concerns of the *Rooker-Feldman* doctrine. *See id.* at 1144 (noting that "*Rooker-Feldman* does not bar a federal-court suit raising a claim previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the state-court judgment").

Defendant's only substantial argument opposing this result is that one of Plaintiff's requests for relief — vacation of the arbitration award — is essentially a claim that the state court "got it wrong." (Def.'s Br. at 7–8.) The Tenth Circuit has counseled that courts, in determining the application of the *Rooker-Feldman* doctrine, pay "close attention to the *relief* sought." *Mo's Express*, 441 F.3d at 1237 (internal quotations omitted) (emphasis in original). It is true that Plaintiff's plea that this court vacate the arbitration award, at first blush, appears to seek a direct

review of the state court judgment that the arbitration award be confirmed.[4] (*See* Compl., Request for Relief ¶ D.) Yet, the Tenth Circuit counsels paying attention to the relief sought for the specific purpose of determining "'whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*.'" *Id.* at 1237 (quoting *Kenman Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002) (emphases in original) (footnote omitted). Here, it is clear to this court that Defendant's alleged fraud, not the state-court judgment, *caused* the alleged injury for which Plaintiff seeks redress under the FDCPA. Ultimately, it may be improper under *Rooker-Feldman* for the court to actually *grant* Plaintiff's request that the arbitration award be vacated, but this court sees no reason why the mere asking for such relief would strip it of jurisdiction over Plaintiff's FDCPA claim. Defendant's contention that the allegations underlying Plaintiff's FDCPA claim have already been conclusively determined by the state court is properly addressed not under *Rooker-Feldman*, but under the preclusion doctrine, which I discuss below. *Bolden*, 441 F.3d at 1143. Based on the foregoing, I find the *Rooker-Feldman* doctrine does not bar this court from asserting subject matter jurisdiction over Plaintiff's FDCPA claims.

### ii. 15 U.S.C.S. § 1692d(1)

Next, Defendant contends Plaintiff's 15 U.S.C. § 1692d(1) claim must fail because her "complaint does not contain any factual assertions that [Defendant] used or threatened to use

---

[4]It should be noted that Plaintiff does not seek solely vacation of the arbitration award but also seeks relief under the FDCPA for statutory and actual damages, as well as attorney's fees and costs. (Compl., Request for Relief ¶¶ A–C.)

-11-

violence." (Def.'s Br. at 4.) Plaintiff counters that her allegations support a finding that Defendant used criminal means — namely perjury — to harm her property. (Pl.'s Resp. at 2.) Section 1692d(1) prohibits a debt collector from "[t]he use of violence or other criminal means to harm the physical person, reputation, or property of any person." 15 U.S.C. § 1692d(1) (2006). Thus, section 1692d(1) does not require that a plaintiff allege the use of violence by the defendant, but is also satisfied by pleading the defendant used "criminal means." *Id.* Plaintiff's complaint alleges that Defendant failed to tell her, the NAF, and the state court that MBNA had sold Plaintiff's debt and, therefore, was not the real party in interest. (*See* Compl. ¶¶ 10–15.) Dutifully presuming Plaintiff's allegations to be true and making all reasonable inferences in her favor, the complaint suggests Defendant committed perjury or subornation of perjury by representing to the court that MBNA owned the alleged credit card debt at issue. (*See id.* ¶¶ 14, 15; Def.'s Br., Ex. 1 at 1 [NAF Claim] [stating Plaintiff is indebted to MBNA in the amount of $15,144.42].) Thus, I find Plaintiff has met the low burden of stating a claim pursuant to 15 U.S.C. § 1692d(1) upon which relief may be granted.

### iii.     Statute of Limitations

Additionally, Defendant contends that all of Plaintiff's FDCPA claims are barred by the statute's limitations period. (Def.'s Br. at 4–5.) Actions under the FDCPA are subject to a one year limitations period. 15 U.S.C. § 1692k(d) (2006). Defendant argues that because service of the debt collection claim, as well as entry of the arbitration award, occurred more than one year before Plaintiff filed this suit, her claim is time barred. (Def.'s Br. at 4–5.) Plaintiff alleges in her complaint, however, that she did not discover Defendant's alleged fraud until January 12, 2007,

three days before she filed her FDCPA action. (Compl. ¶ 19.) The oft-applied "discovery rule," implicitly urged by Plaintiff, would mandate that the statute of limitations did not begin to run in the instant case until Plaintiff knew or had reason to know of the existence of the cause of her injury — Defendant's alleged fraud. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). The Tenth Circuit has not definitively determined that the discovery rule applies to the FDCPA statute of limitations, but this circuit does generally "adhere[] to the traditional discovery rule in determining when a federal statute of limitations runs." *Johnson v. Riddle*, 305 F.3d 1107, 1114 n.3 [10th Cir. 2002], *rev'd in part on other grounds*, No. 01–4028, 2002 U.S. App. LEXIS 12780 (10th Cir. June 27, 2002). Although Supreme Court dicta has now cast doubt on whether the discovery rule is applicable to all federal statutes of limitations, it remains clear that "equity tolls the statute of limitations in cases of fraud and concealment." *TRW Inc. v. Andrews*, 534 U.S. 19, 25–27 (2001). Because Plaintiff has alleged fraud on Defendant's part, I find the FDCPA statue of limitations began to run when Plaintiff knew or had reason to know of Defendant's alleged fraud.[5] *Id.* at 27. Defendant has given this court no reason to believe that Plaintiff knew or should have known of the alleged fraud prior to Plaintiff's claimed date of discovery. (*See* Def.'s Br.; Def.'s Reply.) Reading the facts in the light most favorable to Plaintiff, presuming her well-pleaded allegations to be true, and making

---

[5] I note that fraud must typically be pled with particularity. *See* Fed. R. Civ. P. 9b (2007) (requiring that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001). Although I question whether Plaintiff has met this burden, Defendant has not raised the issue in its motion to dismiss. (*See* Def.'s Br.) I decline to address the issue without argument from the parties.

all reasonable inferences in her favor, I find Plaintiff has alleged sufficient facts at this early stage to show that the FDCPA's statute of limitations was tolled until January 12, 2007, rendering timely her filing of a complaint in this court on January 15, 2007, alleging an FDCPA violation.

### *iv.     Res Judicata and Collateral Estoppel*

Defendant argues the doctrines of *res judicata* and collateral estoppel mandate that because Plaintiff could have litigated her challenges to the arbitration award at an earlier stage — either by filing her own complaint to vacate the award or as a defense to the lawsuit asking for judgment on the award — Plaintiff's FDCPA claims must be dismissed. (Def.'s Br. at 8–9.) Plaintiff does not address Defendant's argument. (*See* Pl.'s Resp.)

As a matter of course, "[t]he doctrines of *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related." *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990). Generally, when a final judgment on the merits has been obtained in a litigation, *res judicata* precludes parties or their privies from relitigating the issues that were decided or issues that could have been raised in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In determining the preclusive effect of a state district court judgment, federal courts must follow the rules chosen by the state from which judgment is taken. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997).

Under Colorado law, *res judicata* constitutes an absolute bar to suit only upon the satisfaction of three elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; and (3) there must be an identity of subject matter and claims for relief. *See State Eng'r v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo. 1989); *see*

*also Concerning Application for Water Rights of Midway Ranches Prop. Owners' Ass'n, Inc. in El Paso and Pueblo Counties*, 938 P.2d 515, 524 (Colo. 1989); *see also Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000). "*Res Judicata* not only bars issues actually decided, but also any issues that should have been raised in the first proceeding, but were not." *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 830 (Colo. 1991). Here, Defendant's argument fails at the third element. Defendant does not assert that Plaintiff's present claims for relief under the FDCPA (or the CCPA for that matter) were ever litigated in state court. (*See* Def.'s Br.; Def.'s Reply.) Moreover, viewing the facts in the light most favorable to Plaintiff, her complaint suggests that these claims could not have possibly been litigated during arbitration, because Plaintiff did not discover the alleged fraud — the basis for her FDCPA and CCPA claim — until January 12, 2007. (*See* Pl.'s Compl. ¶ 19.) Thus, *res judicata* does not bar Plaintiff's claims.

Collateral estoppel provides that "determination of [] issues by a valid final judgment to which such determination was essential" precludes subsequent relitigation of the issues in a subsequent action. *Sil-Flo, Inc.*, 917 F.2d at 1520. Accordingly, it has been said that "[c]ollateral estoppel is broader than *res judicata* since it applies to claims for relief different from those litigated in the first action, but narrower in that it only applies to issues actually litigated." *Block 173*, 814 P.2d at 831. Here, Defendant alleges that the state court judgment is conclusive to the issues raised by Plaintiff in the instant case, namely: (1) the identity of MBNA as a Plaintiff's creditor and its standing as a real party in interest; (2) the validity of Plaintiff's debt; and (3) NAF's partiality. (Def.'s Br. at 7–9.) As an initial mater, I cannot find that Plaintiff's complaint

-15-

attacks the validity of her debt, except to the extent that she argues MBNA does not own her debt and, thus, is no longer her creditor. (*See* Compl.) This concern is fully addressed by determining whether MBNA is a real party in interest.

Regardless, the problem for Defendant is that even if the evidence attached to its briefs could be properly considered, nothing before the court suggest that these issues were *actually litigated* in state court. (See Def.'s Br., Ex. 1 [NAF Claim; Not. of Arb.; Obj. to Arb.; NAF Award], Ex. 2 [Mot. for Confirmation]; Def.'s Reply, Ex. 1 [Tr. of J.].) The NAF award, state court judgment, and Defendant's motion for confirmation of the award do not address any of the now-contested issues. (*See* Def.'s Br., Ex. 1 at 14 [NAF Award]; Ex. 2 [Mot. for Confirmation]; Def.'s Reply, Ex. 1 [Tr. of J.].) Defendant contends that Plaintiff's objection to the arbitration challenges "the fact of whether [Defendant] was acting on behalf of MBNA," but — after having thoroughly examined what Defendant proffers as Plaintiff's objection — this court can perceive no such challenge. (*See* Def.'s Br. at 7, Ex. 1 at 9–13 [Obj. to Arb.].) In fact, the objection shows only that Plaintiff contested the enforceability of the arbitration agreement itself. (*See id.*) Thus, because Defendant has in no way demonstrated that Plaintiff's FDCPA claims were actually litigated in state court, collateral estoppel does not bar this court from addressing the issues before it. Based on the foregoing, Defendant's motion to dismiss Plaintiff's FDCPA claims is denied.

### c.     *Plaintiff's CCPA Claim*

Defendant also urges that Plaintiff's CCPA claim must be dismissed because, under the statute, Plaintiff cannot maintain a cause of action against her opponent's attorney. (Def.'s Br. at 9–10.) The CCPA outlaws deceptive trade practices in connection with the offering or sale of goods or services. COL. REV. STAT. § 6–1–105 (2006). The Colorado Supreme Court has recently held that a client may sue his or her attorney for violating the CCPA for using false or deceptive advertising to induce the client and other members of the public to hire the attorney. *Crowe v. Tull*, 126 P.3d 196, 200 (Colo. 2006). Defendant contends, however, that Plaintiff's CCPA must be dismissed, because she has no basis to claim she received services from her adversary's (MBNA's) attorney. (Def.'s Br. at 10.) Defendant cites no caselaw for the proposition that Plaintiff must have actually received services to make a claim under the CCPA. (*See id.* at 9–10.) I decline to follow that proposition here. Instead, I find Plaintiff's CCPA claim fails on a much simpler and well-established rule of law.

>To prevail on a CCPA claim, a plaintiff must show:
>
>(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). I find, *sua sponte*, that Plaintiff's CCPA claim easily fails at the third step — significant public impact. *See Garett v. Seymour*, 217 F. App'x 835 (10th Cir. 2007) (upholding district court's *sua sponte* dismissal of the complaint for failure to

state a claim). The CCPA is not intended to provide additional remedies to claimants whose disputes have no public impact but are, instead, purely private transactions. *See Rhino Linings U.S. v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 150 (Colo. 2003). To determine whether a challenged practice significantly impacts the public within the context of the CCPA, the court should consider:

> (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Id.* at 149. Further, "[w]hen a transaction is no more than a private dispute . . . as is the case here, it may be more difficult to show that the pubic has an interest in the subject matter." *Id.* at 150 (internal quotation marks omitted).

Taking Plaintiff's allegations as true, I need only address the first consideration. Plaintiff has not alleged that Defendant perpetrated or intends to perpetrate its alleged fraud on anyone except Plaintiff. (*See* Compl.) In fact, Plaintiff has not alleged that Defendant has even publicly advertised the services at issue or that it engages or has engaged in a pattern of fraud, rather than only a single incident. (*See id.*) Put simply, Plaintiff's allegations, read in the most favorable light, reveal nothing more than a purely private dispute, which is patently beyond the purview of the CCPA. *Crowe*, 126 P.3d at 208 (noting "[t]he CCPA can not [sic] be used to remedy a purely private wrong"). Accordingly, I find Defendant is entitled to dismissal of Plaintiff's CCPA claim.

### *d.     Defendant's Motion for Leave to File Notice of Supplemental Authority*

Defendant, three days prior to the hearing scheduled on this motion, filed a motion for leave to file notice of supplemental authority from the Tenth Circuit regarding the *Rooker-Feldman* doctrine.  (*See* Mot. of Def. to File Notice of Def.'s Supplemental Authority from the Tenth Cir. [filed Aug. 14, 2007] [hereinafter "Mot. for Lv."]; Notice of Def.'s Supp. Authority from the Tenth Cir. [filed Aug. 14, 2007].)  Defendant acknowledges that its late filing is in violation of Local Rule 7.1(E), which provides that supplemental authority must be filed at least five days before the hearing.  (Mot. for Lv. at 1.)  Defendant provides the court with no explanation for it's late filing.  (*See id.*)  I need not, however, consider Defendant's unexplained tardiness, because its motion is moot.  Defendant implores the court to consider a case, *Bolden*, which the court had already uncovered in its own research and cited several times in the instant opinion.  (*See Analysis* § 2[b][iii], *supra.*)

### 3.    Conclusion

Based on the foregoing it is therefore ORDERED that:

1.     Defendants' motion (#9) is GRANTED in part and DENIED in part.  The motion is DENIED as to Plaintiff's FDCPA claim.  The motion is GRANTED as to Plaintiff's CCPA claim;

2.     Defendant's motion (#24) for leave to file notice of supplemental authority is DENIED as moot.

Dated this 17th day of August, 2007.

                          BY THE COURT:

                          s/ Edward W. Nottingham
                          EDWARD W. NOTTINGHAM
                          Chief United States District Judge